**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MASS HAULING CORPORATION,** | **}** | |
| **Plaintiff** | **}** | |
| | **}** | |
| **v.** | **}** | **Docket No. 07-76C** |
| | **}** | **(Judge Baskir)** |
| **UNITED STATES of AMERICA** | **}** | |
| **DEPARTMENT OF VETERAN'S** | **}** | |
| **AFFAIRS,** | **}** | |
| **Defendant** | **}** | |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; & CROSS-MOTION TO AMEND COMPLAINT PURSUANT TO RCFC 15(a)

Now comes the Plaintiff, Mass Hauling Corporation ("MHC"), and opposes the motion to dismiss of the Defendant, United States of America, Department of Veteran's Affairs ("the VA"); and cross-moves this Honorable Court for an order allowing the Plaintiff to amend the Complaint. In support of its opposition and cross-motion, Plaintiff states as follows.

## I. INTRODUCTION

This action arises out of a successful low bid solicitation by MHC for waste removal and disposal services to be provided to the VA. The VA awarded the said contract to MHC in November 2003 and has, to date, failed and refused to allow MHC to remove and dispose of waste under the contract. Concomitantly, the VA entered

a clandestine agreement with the losing bidder to perform under MHC's contract without properly terminating MHC's contract and refused MHC's countless demands -- for almost four years -- to resolve the status of the contract awarded to MHC.

## II. FACTUAL BACKGROUND[1]

### 1. Fact Allegations of the Complaint

The Complaint alleges the following facts.[2] By Memorandum dated November 24, 2003, the VA awarded to MHC a Firm Fixed Price Requirements contract, for the provision of all labor, materials, tools, transport, travel, equipment and supervision to conduct waste disposal and removal from the VA facility located at 150 South Huntington Avenue, Boston, Massachusetts ("the Facility"), for an initial period of October 1, 2003 through September 30, 2004 with the four years immediately following the base period as option years ("the Contract"). (Cmplt. Pars. 4-9.) MHC's bid for the five-year period totaled $734,970. (Cmplt. Par. 8.) MHC's offer had been the lowest bid. (Cmplt. Par. 11.) On December 4, 2003, D.B.I. Waste Systems,

[1] MHC is mindful of this Court's Special Procedures Order dated December 1, 2005, limiting MHC's fact presentation to that contained in the Joint Preliminary Status Report ("JPSR"). Because, however, the JPSR predated the instant motion, MHC now presents additional facts responsive to the VA's motion and in support of its argument that the Court should convert the instant motion to one for summary judgment and in support of its motion to amend the Complaint.

[2] References to the Complaint are cited as: "(Cmplt. ['page #' or 'par. #'])."

Inc. (hereinafter "DBI") filed a bid protest with the General Accounting Office ("the GAO") pursuant to 4 C.F.R. §21.0 et seq., alleging that MHC's successful bid was non-responsive and incomplete. (Cmplt. Par. 10-11.) The GAO dismissed the bid protest on December 10, 2003, as not establishing a basis for challenging agency action. (Cmplt. Par. 12.) On December 20, 2003, DBI sought reconsideration by the GAO of the dismissal, whereupon the GAO upheld the dismissal. (Cmplt. Pars. 14-15.) On or about April 22, 2004, DBI filed a bid protest in this Court, Docket No. 04 CV 00713, which was dismissed in December 2003 by agreement, upon a settlement between DBI and the VA. (Cmplt. Pars. 16-17, 19.)

During the pendency of DBI's bid protest, the award of the Contract to MHC was stayed, pursuant to 31 U.S.C. §3553(c)(1). (Cmplt. Par. 18.) After the bid protest action was resolved, despite demands made by MHC, the VA failed and refused to allow MHC to remove and dispose of waste under the Contract, or to provide any explanation for this suspension. (Cmplt. Pars. 19-20.) The VA has failed and refused to terminate the Contract awarded to MHC. (Cmplt. Par 21.) On October 4, 2006, MHC demanded, from Norbert Cebulla, the VA's Contracting Officer, an agency response as to its

obligations under the Contract and to be allowed to remove and dispose of waste under the Contract. (Cmplt. Pars. 22-23.) On or about November 30, 2006, the VA responded that it would require until January 4, 2007 to evaluate MHC's claims. (Cmplt. Par. 24.) To date, the VA has failed and refused to either file an agency response within the time allowed under the Contract Disputes Act, 41 U.S.C. §601, et seq., or allow MHC to remove and dispose of waste under the Contract, or terminate the contract for convenience, or explain why it has not allowed MHC to remove and dispose of waste under the Contract. (Cmplt. Pars. 25-27 & page 2.)

2. Plaintiff's Supplemental Facts, To Be Presented On An Amended Complaint & Summary Judgment

The following facts would be presented on an amended complaint and motion for summary judgment.

1. MHC sustained bid preparation costs in preparing and submitting its bid on the Contract. (Aff. Of Daniel Murphy, Annexed as **Exhibit 1**.)
2. After being awarded the Contract, and in reasonable reliance upon the VA's written commitments to it under the Contract, MHC sustained substantial mobilization costs by expanding its hauling and manpower capacities, to ready itself for the imminent requirement that it conduct the waste disposal and removal services mandated under the Contract. Id. (copy of Contract award annexed as **Exhibit 2**.)
3. After being awarded the Contract, and in reasonable reliance upon the VA's written commitments to it under the Contract,

MHC ceased to pursue, and enter into, alternative potentially lucrative business opportunities. (Murphy Aff., Exh. 1.)

4. Since being awarded the Contract, MHC has been held in limbo by VA's refusal to allow MHC to remove and dispose of waste under the Contract, or to provide any explanation or clarification for the suspension of its rights under the Contract. Id.
5. On or about April 22, 2004, DBI commenced an action in the United States Court of Federal Claims, seeking an injunction prohibiting the VA from awarding the contract to MHC and disallowing MHC to perform. (Aff. Of Russell Homsy, Esq., annexed as **Exhibit 3**.)
6. On or about October 28, 2004 the Court of Claims dismissed the said lawsuit pursuant to a joint motion to dismiss filed by DBI and the VA, over the express objection of MHC. (October 28, 2004 Order in Case No. 04-00713.) Id. The said motion to dismiss was expressly pursuant to an alleged settlement between DBI and the VA. Id.
7. Although it had been permitted to intervene in the lawsuit, MHC was not privy to the alleged settlement between DBI and the VA; and the said alleged settlement has never been disclosed to MHC, despite its attorneys' requests for disclosure. Id. (Murphy Aff., **Exh. 1**)
8. In its Order dismissing the said Court of Claims lawsuit over MHC's objection and pursuant to DBI's and the VA's request, the Court of Claims stated, "The dispute is framed as a challenge by plaintiff [DBI] to the award to Mass. Hauling [MHC]. As the facts currently stand, the award to Mass. Hauling is still in place." (October 28, 2004 Order in Case No. 04-00713 (emphasis added.); Order annexed as **Exhibit 3**.)
9. Additionally in the Order of October 28, 2004, the Court held, "Whatever rights [MHC] has in the future . . . it may not force [the VA] to litigate the complaint currently pending." (October 28, 2004 Order in Case No. 04-00713.) Id.
10. Subsequent to October 28, 2004, MHC through its attorneys contacted the VA on numerous occasions, demanding permission for MHC to remove and dispose of waste under the Contract and demanding an explanation from the VA of MHC's rights under the Contract. (Homsy Aff., **Exh. 3**.)

11. The VA has never issued a termination of its Contract with MHC, and the award to Mass. Hauling is still in place.[3] (Murphy Aff., Exh. 1)
12. On October 4, 2006 MHC filed written a claim with the Contracting officer for the VA, alleging that the VA was liable for damages in the amount of $244, 990 (calculated as its lost profit of $48,998 for each year of the contract). The VA has, to date, not properly responded to that Claim. Id. But see Footnote 3, supra. More than forty-five days later, on or about November 30, 2006, the VA responded that it would require until January 4, 2007 to evaluate MHC's claims. As of the date of filing this suit, no response was received.
13. MHC made countless inquiries to the VA's Contract Administrator, Norbert Cebula, and others representing the VA, as to the status of MHC's contract during the years after the Contract was awarded to MHC and after DBI's bid protests. (Murphy Aff., Exh. 1.)
14. MHC's Dan Murphy was referred to a woman in the Federal government in Washington D.C., who led MHC to believe that the result would be positive for MHC. Id.
15. Throughout 2004 and 2005 MHC's lawyer, Russell Homsy, repeatedly called the VA's lawyers demanding a termination or the status of MHC's Contract. He was repeatedly told that people would look into the matter, but never received a proper termination or explanation of the status of MHC's contract. (Homsy Aff., Exh. 3.)

---

[3] In Plaintiff's counsel's file is a copy of a purported letter from Felicia Morales, a Contracting Officer of the VA, dated August 20, 2007, addressed to MHC and "memorialize[ing]" that the Contract was terminated for convenience "effective September 27, 2004" and that "the VA settled this dispute and awarded the contract to the incumbent." Annexed as **Exhibit 5**. This letter was apparently given over to Plaintiff's counsel after this lawsuit began, and MHC denies ever having received the letter. Also, the letter directly contradicts the Order of this Court dated October 28, 2004, which holds that, as of that date and subsequent to the report of the settlement between DBI and the VA, "the award to Mass. Hauling is still in place." **Exhibit. 4**. In any event, the letter is meaningless at this point, as it was clearly created during this litigation and as a result of a statement by MHC's attorney to the defense counsel that MHC never received any writing from the VA as to the status of MHC's contract.

## III. ARGUMENT

The Motion To Dismiss should be denied because (1) it relies on facts not in the Complaint; (2) in any event, the Complaint properly makes out causes of action for damages; and (3) the claim for declaratory relief is proper as "incidental to" the money damages claim.

1. The Motion To Dismiss improperly relies upon facts not contained in the Complaint.

On a motion to dismiss under RCFC 12(b)(6), the court only may consider facts contained in the pleadings. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The motion must be denied if the complaint's fact allegations, including all reasonable inferences therefrom, provide plaintiff any possible basis for relief. Id.

At bar, the VA's motion must fall as it relies on facts outside the Complaint. First, it alleges that specific language in a "termination for convenience clause" limited the parties' rights under the Contract (Def.Mtn. pp.3-5). There is, however, no allegation in the Complaint that the Contract contained such limiting language.[4] Second, the VA alleges other facts not contained in the Complaint: that "D.B.I. [was] awarded the contested contract" (Def.Mtn. p.2); and that "D.B.I. has performed pursuant to the contract since October 28, 2004" (Def.Mtn.

[4] The complaint does state, "the VA . . . failed and refused to terminate the Contract for convenience." (Cmplt. Par. 75.) However, the language and applicability of any such termination clause is not set forth in the Complaint.

p.2.)[5] Thus, as the motion relies on facts not in the Complaint – and which also are unresolved and relevant to the dispute, it must be denied.

Alternatively, the court should deem the motion one for summary judgment and grant the parties the opportunity to gather and present additional facts. See RCFC 12(b) & (c); RCFC 56(e) & (f).

2. In any event, the Complaint is sufficient to withstand the motion to dismiss.

The VA, while essentially conceding the truth of MHC's factual presentation, asserts MHC is entitled to no damages. The government's argument misses the mark, as MHC is entitled to several categories of damages.

MHC sets out a sufficient prima facie case for recovery of damages by the allegations in the Complaint, specifically, that the VA awarded a contract to MHC and breached it by suspending MHC's performance, secretly settling issues related to the contract with a third party contractor, permitting performance on MHC's contract by another party without terminating or explaining to MHC the status of

[5] The Complaint does state "the VA continues to use DBI . . . for waste disposal" (Cmplt. Par. 45.), but does not state that DBI was awarded the Contract. Indeed the questions of who was awarded the Contract, when, and why, are disputed.

its Contract despite the fact that for several years MHC's made countless demands of the VA to allow it to carry waste under the Contract or to provide information as to the status of the Contract.

MHC is entitled to damages as follows:

(i) bid preparation costs. 48 C.F.R. §52.249-2(g)(2)(i) (on government's premature termination of contract, contractor is entitled to final settlement costs including its initial costs and preparatory expenses); Rockwell Int'l. Corp. v. United States, 8 Cl. Ct. 662 (1985) (bid preparation costs recoverable);

(ii) start-up and initial preparatory costs. 48 C.F.R. §52.249-2(g)(2)(i); See OAO Corp. v. Unites States, 17 Cl. Ct. 91 (1989) (pre-award start-up costs granted, where necessary to meet a strict performance schedule as set out in the cotract); Radant Techs., Inc. v. ASBCA, 91-3 BCA Par. 24,106 (1991) (pre-award costs were found reasonably necessary to meet contract performance schedule); Essex Electric Engineers, Inc. v. United States, 702 F.2d 998 (Fed. Cir. 1983) (costs of canceling start-up costs on a contract terminated for convenience are recoverable "other costs"); Inland Container, Inc. v. United States, 512 F.2d 1073, 1081 (Ct. Cl. 1975) (plaintiff entitled to "operating loss" damages as "initial costs and preparatory

expense" when it purchased equipment to perform a contract which was then terminated for convenience).

(iii) standby-readiness costs. See OAO, supra; Radant Techs., supra; Maxima Corp. v. United States, 847 F.2d 1549, 1553 (Fed. Cir. 1988) (where plaintiff maintained capacity to provide minimum services under contract, even though they were not provided, government prohibited from retroactively terminating for convenience); SIPCO Servs. & Marine, Inc. v. United States, 41 Fed. Cl. 196 (1998) (contractor entitled to damages where government actions delayed performance and increased costs);

(iv) settlement costs (including legal fees). 48 C.F.R. §52.249-2(g)(2)(i); Kalvar Corp. v. United States, 211 Cl. Ct. 192 (1976), cert. denied, 434 U.S. 830 (1977), appl. after remand, 218 Cl. Ct. 29 (1989) (on lawsuit following constructive termination, contractor is entitled to legal fees equal to those necessary to prepare a termination settlement where the government failed to follow proper procedures); Crux Computer Corp. v. United States, 24 Cl. Ct. 223 (1991) (litigation fees recoverable); Cox v. United States, 17 Cl. Ct. 29 (1989) (same); and

(v) expectancy damages. See Kalvar Corp., Inc. v. United States, 543 F.2d 1298 (Ct. Cl. 1976) (abuse of discretion or bad faith on termination warrants imposition against government of breach of contract damages including lost profits). Plaintiff discusses its entitlement to expectancy damages in more detail below.:

a. MHC Is Entitled To Expectancy Damages

MHC is entitled to expectancy damages for the VA's breach of the Contract award. It is well-established that "termination for convenience . . . is not of unlimited availability to the government, [and] is not an open license to dishonor contractual obligations." Maxima, 847 F.2d at 1553. See Torncello v. United States, 681 F.2d 756, 770 (Ct. Cl. 1982) (government may be liable for breach of contract damages where it "dishonor[s], with impunity, its contractual obligations"). Rather, a termination for convenience clause only can be invoked where there is a change in circumstances or expectations of the parties to the after the award of the contract. Maxima, 847 F.2d at 1554 ("'changed expectations' is a prerequisite to termination of a contract for convenience"). See also Municipal Leasing Corp. v. United States, 7 Cl. Ct. 43, 47 (1984) ("A termination for convenience clause will not act as a constructive shield to protect [the government]

from the consequences of its decision to follow an option considered but rejected before contracting with plaintiff").

On a question of whether a termination for convenience constituted an abuse of discretion, thereby warranting imposition against the government of expectancy damages, the court weighs four factors: evidence of bad faith, lack of a reasonable basis, acting outside the contracting officer's discretion, and a violation of a statute or regulation. Keco Indus. v. United States, 492 F.2d 1200 (Ct. Cl. 1974). The final factor, violation of a statute or regulation, can by itself be proof of an arbitrary or capricious termination. Id. At bar, there was an abuse of discretion.

First, the VA has violated the law. The VA failed to properly terminate for convenience, as it did not serve a written termination notice on MHC by certified mail or hand delivery. See FAR 49.101(b) (termination is properly accomplished by delivery to contractor of written notice of termination). See also FAR 49.102 (government must provide written termination by certified mail or hand delivery). Voices R Us, Inc., ASBCA No. 51565, 99-1 BCA Par. 30,213 (ruling against government on summary judgment where it failed to prove termination notice was properly sent to and received by contractor).

Moreover, the VA indirectly violated the law because, inasmuch as the contract has not been terminated for convenience, MHC has not been able to properly submit a final termination settlement proposal pursuant to 48 C.F.R. §52.249-2(e) (allows contractor one year after termination to submit settlement proposal).

Also, if the Government stands by its position that the Contract was terminated several years ago, see **Exhibit 5**, its violation of the law in failing to timely inform MHC has precluded MHC from submitting a final settlement proposal within the one year time period. See also 48 C.F.R. §52.249-2(g)(2)(i) (settlement costs include initial costs and preparatory expenses). Also, after Plaintiff's demand of October 4, 2006, inter alia, the VA failed and refused to provide an Agency response in accordance with 41 U.S.C. §601, et seq. within the sixty (60) day period.[6] Thus, the VA abused its discretion.

Moreover, Plaintiff's allegations show that the VA, lacking a reasonable basis and in bad faith, dishonored its contractual obligations with impunity. The VA's failure to issue a termination or any statement of MHC's status under the Contract, and its refusal to

---

[6] According to one authority, if the VA in fact terminated for convenience the Contract with MHC and issued a replacement Contract with DBI in 2004, the VA should have to support the termination with findings of fact and law. See Keyes, Government Contracts at 392. This it did not do.

disclose to MHC the nature of the "settlement" between DBI and the VA, lacked any reasonable basis.[7]

The VA deprived MHC of its Contract and refused to inform MHC of the status of the award, while holding MHC in suspense with no reasonable basis. See Scott Timber Co. v. United States, 65 Fed. Cl. 131134 (2005) (where government never issued a termination, but held contractor in suspension on its contracts, government liable for breach damages as it "was long aware of its right to terminate [the] contracts" but failed to). See also Brandt v. Hickel, 427 F.2d 53, 57 (9th Cir. 1970) ("To say to these appellants, 'The joke is on you. You shouldn't have trusted us,' is hardly worthy of our great government"). The VA improperly held MHC in suspense from performing, for several years, despite MHC's demands, without explanation. Northrop Grumman Corp. v. United States, 47 Fed. Cl. 20 (2000) (government contracts contain implied obligation not to do any act that would hinder, delay or prevent performance). MHC reasonably relied to its detriment on the facts that: it submitted the low bid and

[7] Indeed, the government notes that MHC never "challenged" the alleged settlement. See **Exhibit 4** (VA letter dated August 20, 2007). This statement is outrageous, and is representative of the government's reckless and cavalier attitude in this matter, because MHC could not possibly have challenged a settlement the terms of which the government hid from them and refused to disclose.

was awarded the Contract, by written memorandum from the VA; DBI's first two protests of the award were rejected, with written findings that DBI's grounds for protest were meritless; and, the decision and Order of this Court dated October 28, 2004, holding that "As the facts currently stand, the award to Mass. Hauling is still in place," was never contraindicated by the VA, despite MHC's numerous requests for clarification, and the request of MHC's attorney, Russell Homsy, for disclosure of the settlement agreement with DBI. MHC increased its equipment and manpower capacities for what was to be a significant growth in its business and stood by ready to perform.[8]

Also, if, as is likely,[9] the VA terminated MHC's Contract simply to acquire a better contract price from DBI, then the purported

---

[8] As a result of the VA's failure to disclose the settlement to MHC, and refusal to terminate or communicate with MHC, MHC was harmed by not knowing the status of the Contract while it stood by ready to perform.The VA's failure to terminate required MHC to remain on standby, ready to perform its Contract. See Commercial Cable Co. v. United States, 170 Cl. Ct. 813 (1965) (government's decision not to terminate for convenience, absent bad faith, is conclusive and binding on parties). Also, MHC was also harmed by the delay in its inability to review, and challenge the propriety of any granting of the Contract to DBI. See Roberts v. Unites States, 357 F.2d 938, 946 (1966) (where government fails to timely assert its position under termination for convenience clause, "it may be estopped [from same] by an act of waiver"). See also Maxima, 847 F.2d at 15546 ("The need for mutual fair dealing is no less required in contracts to which the government is a party, than in any other commercial arrangement").

[9] MHC's bid was a mere $6 per year below the bid of DBI. See Exhibit 2.

termination was outside the Contracting Officer's discretion. Keco Indus., 492 F.2d 1200. As evidence in the Contract award memorandum, MHC submitted a lower bid than DBI and was entitled to the Contract under the rules governing the award. See **Exhibit 2**. The only plausible way DBI could have subsequently been awarded the Contract is through the VA's acceptance of an illegally changed bid -- an impropriety constituting a clear abuse of discretion and violation of the public bidding laws. See Municipal Leasing, 7 Cl. Ct. at 47 (convenience termination clause does not protect government from its "decision to follow an option considered but rejected before contracting with plaintiff"). Northrop Grumman, 47 Fed. Cl. 20. The VA was without discretion to terminate the Contract because there was no change in circumstances or expectations of the parties to the original contract. Maxima, 847 F.2d at 1554. Hence, the VA acted arbitrarily and capriciously and abused its discretion.

Finally, if the Court deems that the VA constructively terminated MHC's contract for convenience after the contract was awarded, then the VA must now show a "valid ground" for such termination. John Reiner & Co. v. United States, 325 F.2d 438, cert. denied, 377 U.S. 931 (1964) (where government constructively canceled contract after

it was awarded, government was required to prove that the termination was justified by a "valid ground" in order to invoke the convenience termination liability limits). Here, the Court should convert the VA's dismissal motion to one for summary judgment and permit MHC an opportunity to serve discovery demands upon the government and DBI, inquiring as to the exact terms, as well as the basis for the back-room deal that resulted in DBI usurping the contract that was previously awarded to MHC. See CW Gov't. Travel, Inc. v. United States, 61 Fed. Cl. 559, 576 (2004) (citing the "overriding public interest" in requiring government officials to "follow public procurement statutes and regulations" to ensure open, honest and fair procurements). Cf. Locke v. United States, 151 Ct. Cl. 262, 267 (1960) ("The defendant who has wrongfully broken a contract should not be permitted to reap advantage from his own wrong by insisting on proof which by reason of his breach is unobtainable").

3. Plaintiff's claim for declaratory relief is proper.

This Court has jurisdiction over the request for a preliminary injunction, as MHC's request for an injunction is "incidental to and collateral to a claim for money damages." See 28 U.S.C. §1491(a)(2) & (b). Bobula v. Dept. of Justice, 970 F.2d 854, 859 (Fed. Cir. 1992).

Moreover, an injunction is proper. As discussed above, MHC likely will succeed on the merits. Also, MHC will have no adequate remedy at law if the injunction is not issued and balancing the equities militates in favor of an injunction. FMC Corp. v. United States, 3 F.3d 424, 426-427 (Fed. Cir. 1993) (court considers the merits, irreparable harm, the balance of hardships, and the public's interests). MHC has consistently maintained that it is ready, willing and able to provide waste removal services under the award, and it seeks specific performance on its executory Contract.

## IV. PLAINTIFF'S CROSS-MOTION TO AMEND THE COMPLAINT

MHC moves for leave to amend the Complaint to add factual allegations concerning actual damages for bid preparation costs, performance preparation expenses, standy-readiness costs, and settlement costs; as well as allegations concerning the disputed issue of the VA's failure to terminate or inform Plaintiff of the status of its award, despite Plaintiff's demands for such information.

No Answer has been filed, and no discovery conducted. The VA will not be prejudiced by an amendment of the Complaint. In the

interests of justice, MHC should be permitted to amend the Complaint.

## IV. CONCLUSION

WHEREFORE, in accordance with the foregoing, the Plaintiff respectfully requests this Honorable Court to: (a) deny Defendant's motion to dismiss in all respects; or alternatively, convert the motion to one for summary judgment; (b) issue an ORDER granting Plaintiff leave to file an amended Complaint within thirty days; (c) issue an ORDER enjoining the VA from using another contractor for the removal of solid waste from the Facility and allowing MHC to perform waste disposal and removal under the Contract during the pendency of the within action, and afterward for the duration of the Contract; and (d) grant such other and further relief as the Court shall deem just and proper.

The Plaintiff
**MASS HAULING CORPORATION,**
**By its attorney**

**s/Carlo Cellai**____________ Dated: January 25, 2008

Carlo Cellai, Esq.
CELLAI LAW OFFICES, P.C.
355 Congress Street, Suite 2B
Boston, MA 02110
Telephone: (617) 367-2199
Facsimile: (617) 367-2075

## CERTIFICATE OF FILING

I certify that on this date a copy of PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; & CROSS-MOTION TO AMEND COMPLAINT PURSUANT TO RCFC 15(a) was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

DATED: January 25, 2008 s/Carlo Cellai_____

# PLAINTIFF'S APPENDIX

## TABLE OF CONTENTS

Exhibit 1: Affidavit of Daniel J. Murphy

Exhibit 2: Memorandum awarding Contract

Exhibit 3: Affidavit of Russell T. Homsy, Esquire

Exhibit 4: U.S. Court Of Federal Claims, Order of Hon. Bruggink Dated October 28, 2004

Exhibit 5: Letter dated August 20, 2007

(The referenced documents are included on a 2nd "PDF" document being filed herewith.)