**EXHIBIT 1**

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **MASS HAULING CORPORATION,**<br>**Plaintiff**<br><br>**v.**<br><br>**UNITED STATES of AMERICA**<br>**DEPARTMENT OF VETERAN'S**<br>**AFFAIRS,**<br>**Defendant** | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>} | **Docket No. 07-76C**<br>**(Judge Baskir)** |

## AFFIDAVIT OF PLAINTIFF'S EMPLOYEE DANIEL J. MURPHY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; & IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO AMEND COMPLAINT

I, Daniel J. Murphy, on oath depose and state as follows:

1. I am a vice president of Plaintiff, Mass Hauling Corporation ("MHC").
2. In November 2003, MHC submitted the successful low bid for waste removal and disposal services to be provided to the VA. I had, and still have, responsibility over the said bid and the resultant Contract.
3. By Memorandum dated November 24, 2003, the VA awarded to MHC a Firm Fixed Price Requirements contract, for the provision of all labor, materials, tools, transport, travel, equipment and supervision to conduct waste disposal and removal from the VA facility located at 150 South Huntington Avenue, Boston, Massachusetts ("the Facility"), for an initial period of October 1, 2003 through September 30, 2004, with the four years immediately following the base period as option years ("the Contract").
4. MHC's bid for the five-year period totaled $734,970.
5. On December 4, 2003, D.B.I. Waste Systems, Inc. (hereinafter "DBI") filed a bid protest with the General Accounting Office ("the GAO") pursuant to 4 C.F.R. §21.0 et

seq., alleging that MHC's successful bid was non-responsive and incomplete.

6. The GAO dismissed the bid protest on December 10, 2003, as not establishing a basis for challenging agency action.
7. On December 20, 2003, DBI sought reconsideration by the GAO of the dismissal, whereupon the GAO upheld the dismissal.
8. Subsequently, DBI filed a bid protest in the Federal District Court, which was dismissed for lack of jurisdiction.
9. On or about April 22, 2004, DBI filed a bid protest in this Court, Docket No. 04 CV 00713, seeking a restraining order/injunction against the VA prohibiting it from awarding the contract to MHC and allowing MHC to perform any work in Jamaica Plain pursuant to the contract.
10. On October 28, 2004 the Court of Claims dismissed the said lawsuit pursuant to a joint motion to dismiss filed by DBI and the VA, over the express objection of MHC. (October 28, 2004 Order in Case No. 04-00713.)
11. The said joint motion to dismiss filed by DBI and the VA was expressly made pursuant to an alleged settlement by and between DBI and the VA.
12. MHC, although it had been permitted to intervene in the lawsuit, was not privy to the alleged settlement between DBI and the VA; and the terms and conditions of the said settlement have never been disclosed to MHC.
13. On information and belief, DBI has continued to do the work required under MHC's the Contract, yet without having a contract. My office has seen DBI waste disposal equipment located at the subject Facility, and on information and belief, DBI's truck are hauling the waste from the Facility.
14. I have been carefully and constantly monitoring the Metro-Boston VA upcoming bid proposal request list since our Contract was awarded, and no bid proposal requests related to the subject Contract for the 150 South Huntington Avenue, Boston Facility has surfaced.
15. In its Order dismissing the said Court of Claims lawsuit over MHC's objection and pursuant to DBI's and the VA's request, the Court of Claims stated, "The dispute is framed as a challenge by plaintiff [DBI] to the award to Mass. Hauling [MHC]. <u>As the facts currently stand, the award to</u>

Mass. Hauling is still in place." (October 28, 2004 Order in Case No. 04-00713 (emphasis added.))

16. Additionally in the Order of October 28, 2004, the Court held, "Whatever rights [MHC] has in the future . . . it may not force [the VA] to litigate the complaint currently pending." (October 28, 2004 Order in Case No. 04-00713.)
17. During the pendency of DBI's bid protest, the award of the Contract to MHC was stayed, pursuant to 31 U.S.C. §3553(c)(1).
18. After the bid protest action was resolved, despite demands made by MHC, the VA failed and refused to allow MHC to remove and dispose of waste under the Contract, or to provide any explanation for this suspension.
19. On countless occasions (probably at least a dozen) during the several months after the Contract was awarded to MHC and after the bid protests, I made inquiries to the VA's Contract Administrator, Norbert Cebula, as to the status of MHC's contract. Despite my inquires, I was never issued and never received a termination, termination for convenience, or other indication that in fact the VA would dishonor its contract with MHC. I was never informed that the VA had, duplicitously, with MHC's contract remaining executory, permitted DBI to perform MHC's contract or granted to DBI the exact same contract that had already been awarded to MHC.
20. At some point, I was referred to a woman in the Federal government in Washington D.C. I telephoned that woman and asked the status of MHC's Contract, and was told variously that: they were checking it out; they would get back to me; or they were working out DBI's complaint. At that time, I was led to believe that the result would be positive for MHC. Clearly, I was being railroaded, or being misled.
21. The VA has failed and refused to terminate the Contract awarded to MHC.
22. On October 4, 2006, through our attorneys, Cellai Law Offices, P.C., MHC demanded, from Norbert Cebulla, the VA's Contracting Officer, an agency response as to MHC's rights and obligations under the Contract, and demanded to

be allowed to remove and dispose of waste under the still existing Contract between MHC and the VA.

23. More than forty-five days later, on or about November 30, 2006, the VA responded that it would require until January 4, 2007 to evaluate MHC's claims.

24. To date, the VA has failed and refused to either file an agency response within the time allowed under the Contract Disputes Act, 41 U.S.C. §601, et seq., or allow MHC to remove and dispose of waste under the Contract, or terminate the contract for convenience, or explain why it has not allowed MHC to remove and dispose of waste under the Contract for the original terms and duration.

25. MHC sustained bid preparation costs in preparing and submitting its bid on the Contract. Specifically, MHC undertook bookkeeping and clerical work to review manpower and mechanical capacities and schedules, and determine feasibility of and scheduling for the proposed work. MHC also underwent additional internal management, sales, and supervisory employee discussions, meetings and communications, to review workload capacity, feasibility and prioritization matters necessary to determine whether to bid, and what the bid costs and work arrangements would be. The contract required the provision of all labor, materials, tools, transport, travel, equipment and supervision to conduct waste disposal and removal from the VA facility. MHC's capacity and costs in each of these areas had to be calculated, and apportioned, before the bid could be issued.

26. MHC's unit costs for the bid preparation were substantial, at least four thousand dollars.

27. Further, after being awarded the Contract, and in reasonable reliance upon the VA's written commitments to MHC under the Contract, MHC sustained substantial mobilization costs by expanding its hauling equipment, vehicle and manpower capacities to ready itself for the imminent requirement that it conduct the waste disposal and removal services mandated under the Contract.

28. I was personally present at the VA facility at 150 South Huntington Avenue, Boston when the bid award was announced in November 2003. Under the terms of the

Contract as announced, MHC was scheduled and required to begin waste removal imminently.

29. It is noted that this Contract was a very significant work order for our company and required a major expansion of manpower, equipment and assets.
30. Also, in the near term after being awarded the Contract, and in reasonable reliance upon the VA's written commitments to it under the Contract, MHC ceased to pursue, and enter into, alternative potentially lucrative business opportunities.
31. Since being awarded the Contract, MHC has been held in limbo by VA's refusal to allow MHC to remove and dispose of waste under the Contract, or to provide any explanation or clarification for this suspension of its rights under the Contract. MHC has maintained, to this day, its standby capability to perform under the Contract.
32. The VA has never issued a termination for convenience of its Contract with MHC, either formally or informally.
33. Up until the present day, MHC's rights under the Contract have been suspended without explanation or clarification by the VA, and the award to Mass. Hauling is still in place.
34. Up until the present day, MHC's rights under the Contract have been have remained unresolved and in dispute, and the award to Mass. Hauling is still in place.
35. On October 6, 2006 MHC filed written a claim with the Contracting officer for the VA, alleging that the VA was liable for damages in the amount of $244, 990 (calculated as its lost profit of $48,998 for each year of the contract). The VA has, to date, not responded substantively to the claims demanded in the Claim.
36. MHC has maintained a standby readiness to perform the Contract that has been awarded to it. MHC has continually maintained that it is ready, willing and able to provide services pursuant to the award, with minimal increases for CPI and regional disposal increases since inception of the Contract. In the instant matter, the Contract required MHC to provide all labor, materials, tools, transport, travel, equipment and supervision to conduct the subject waste disposal and removal.
37. The Defendant has consistently shown that it will ignore the obligations imposed by Federal statutes and regulations as

well as basic contract principles. Because the award of the Contract to MHC has not been terminated for convenience or terminated at all under 48 C.F.R. §52.249-2(a), MHC is, and has been, obligated to stand ready to perform or risk compromising its rights and defaulting on its obligations under the Contract. That the VA has failed and refused to inform MHC of the status of MHC's obligations under the Contract or to respond to the numerous good faith demands of MHC pursuant to 41 U.S.C. §601, et seq. is reckless, unconscionable, and in bad faith violation of fundamental contract principals.

38. As the contract has not been terminated for convenience or otherwise to date, and because MHC has not been informed of the nature of the settlement of the law suit involving DBI, the contract is still enforceable between the VA and MHC for the waste removal and disposal services for the Facility.
39. Under these circumstances, MHC has not been able to submit a final termination settlement proposal pursuant to 48 C.F.R. §52.249-2(e).
40. MHC's demands to be allowed to exercise its rights under the terms and conditions of the Contract by performing under the Contract have not yielded a response from the VA.
41. The Defendant has failed and refused to provide an Agency Response in accordance with 41 U.S.C. §601, et seq. within the sixty (60) day period following MHC's demand.
42. The Defendant's response to the October 2006 demand was simply to request additional time to respond. To date, more than fourteen months later, the Defendant has still failed and refused to provide an Agency response to the Plaintiff's demands.
43. Because the VA has also chosen to ignore its statutorily imposed obligations pursuant to 41 U.S.C. §601, et seq., MHC is left in the unenviable position of being tied to a contract which it has not been permitted to perform and at the same time has not been terminated.
44. MHC's foremost goal and motivation in this suit is to be awarded the right to perform the Contract that was awarded to MHC under public bid. It is improper and, I believe, fraudulent that DBI, a company that, unlike MHC, does lots of government contracting, has used its knowledge of

government actors to step into my Contract under a veil of secrecy, avoiding public bid, and usurp our Contract.

I certify under the pains and penalties of perjury that the within statements are made in good faith, are true and accurate to the best of my knowledge and belief, and that I am duly authorized to certify the same on behalf of Mass Hauling Corporation.

Signed: ______________________ Dated: 1/24/2008

Daniel J. Murphy, Vice President
MASS HAULING CORPORATION

**EXHIBIT 2**

DEPARTMENT OF VETERANS AFFAIRS

November 24, 2003

Memorandum for File

In Reply Refer To:

PRICE EVALUATION: IFB 523-120-03, Solid Waste Pick-up and Disposal, Boston Healthcare System, Jamaica Plain, West Roxbury and Brockton

Jamaica Plain

As shown on the attached, Mass Hauling submitted the low price of $734,970..00 This price is within $6.00 per year of the second low price submitted by DBI Waste Systems and is within $6.00 per year of the Independent Government Estimate. The award will be made to Mass Hauling

West Roxbury

As shown on the attached, Waste Solutions submitted the low price of $438,628.00. This price is within 4% of the second low and the third low prices submitted. The low price is within 10% of the Independent Government Estimate. The low price of $438,628.00 is approximately 20% lower than the average price of $525,000.00 of the 6 other prices submitted. The award will be made to Waste Solutions

Brockton

As shown on the attached, the low price was submitted by BFI. This price is less than 3% of the price submitted by the second low price. The low price is 8% lower than the Independent Government Estimate. The low price of $831,079 is approximately 12% lower than the average price of $935,600 of the 5 other offers. The award will be made to BFI

Norbert J. Cebula
Contracting Officer

# EXHIBIT 3

**THE UNITED STATES OF AMERICA**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| MASS HAULING CORPORATION,<br>Plaintiff<br><br>v.<br><br>UNITED STATES of AMERICA<br>DEPARTMENT OF VETERAN'S AFFAIRS,<br>Defendant | DOCKET NO.<br>**07-0076C**<br>(Judge Baskir) |

**<u>AFFIDAVIT OF PLAINTIFF'S FORMER ATTORNEY, RUSSELL T. HOMSY, ESQUIRE</u>**

*I, Russell T. Homsy, Esquire, on oath depose and state as follows:*

1. I am an attorney in good standing licensed to practice law in the Court of Federal Claims and the Commonwealth of Massachusetts.

2. I am the former attorney for the Plaintiff, Mass Hauling Corporation ("MHC").

3. The Plaintiff, MHC was the low-bidder on an Invitation for Bids and was awarded a contract to provide waste removal and disposal services at the VA Hospital in Boston, Massachusetts.

4. The second low-bidder, DBI Waste Services filed suit in the Court of Federal Claims seeking to challenge the award of the contract to MHC in the matter of *DBI v. the United States*, Case No. 04-00713 ("DBI Suit").

5. During 2004, on behalf of Mass Hauling I motioned the Court to Intervene in the DBI Suit.

6. At some point prior to a summary judgment hearing in the DBI Suit, the Government settled with DBI.

7. The Government, through its attorney Steven M. Mager, informed me that they settled the suit with DBI, the contract with MHC would be terminated for convenience and that DBI would be awarded the contract.

8. Despite my requests to Attorney Mager, I was not provided with a copy of the settlement agreement between DBI and the Government.

9. The court held a hearing regarding the settlement. At the hearing, I expressly objected to the settlement but was informed that MHC had no standing to challenge the settlement, and that I would have to assert MHC's rights in a subsequent suit after MHC's contract was terminated for convenience by the Government.

10. In the Court's Order dismissing the DBI Suit, the Court stated, "[t]he dispute is framed as a challenge by plaintiff [DBI] to the award to Mass. Hauling [MHC]. **As the facts currently stand, the award to Mass. Hauling is still in place.**" (October 28, 2004 Order in Case No. 04-00713. *Emphasis added.*

11. After the hearing, Attorney Mager told me to expect to receive in the mail a termination for convenience regarding MHC's contract.

12. After not receiving at my office or my client's office a termination for convenience, I began to telephone Attorney Mager and the Boston area attorney for the VA, Attorney Merilee Rosenberg, asking for the status of the termination. I was continually informed that a termination was imminent.

13. I informed both Attorney Mager and Attorney Rosenberg that I thought the Government's settlement with DBI was improper, and that I would be filing suit against the Government after receiving the termination for convenience since MHC's claim would not be ripe until the contract was terminated.

14. Despite my numerous calls and inquiries, the Government failed and refused, for several years while I was handling this case, to terminate the contract for convenience or otherwise explain to MHC its refusal to allow MHC to remove and dispose of waste under the Contract that was issued to MHC on November 24, 2003.

15. Neither the VA nor any other Federal Agency issued a termination of MHC's Contract during the period when I was representing MHC.

16. Despite numerous demands made by me on behalf of MHC, the VA failed and refused to issue a termination for convenience, to allow MHC to remove and dispose of waste under the Contract, or to provide any explanation for this suspension of MHC's contract.

17. On numerous occasions throughout the end of 2004 and throughout 2005, I telephoned attorney Mager and Attorney Rosenberg to tell them that MHC never received a notice of termination for convenience, and that MHC was being unjustly denied the rights to the subject contract.

18. MHC and I never received a termination or termination for convenience, or any other explanation of the status of the Contract awarded to MHC.

19. During the summer of 2005, after a personal medical emergency and with the consent of MHC, I transferred this case from my office to Attorney Carlo Cellai.

20. During the fall of 2005, I assisted Attorney Cellai in the transition of this case to his office.

21. While assisting Attorney Cellai, I telephoned Attorney Rosenberg on numerous occasions and told her that MHC did not receive a termination for convenience and that MHC was entitled to the benefits of the subject contract. Attorney Rosenberg told me that she would look into the matter, and that someone probably made a mistake by not terminating the contract.

22. Up until the time I completed assisting Attorney Cellai during December of 2005, the Government had still not terminated MHC's contract to provide waste removal and disposal services at the VA Hospital.

Signed under the pains and penalties of perjury.

Russell T. Homsy, Esquire

Dated: 1/25/08

**EXHIBIT 4**

# In the United States Court of Federal Claims

No. 04-713C
(Filed: October 28, 2004)

**********************************
D.B.I. WASTE SYSTEMS, INC.,

*Plaintiff,*

v.

THE UNITED STATES,

*Defendant,*

and

MASS. HAULING CORPORATION,

*Intervenor.*
**********************************

## ORDER FOR DISMISSAL

Pending is the parties' joint motion for voluntary dismissal and notice of request for a hearing, filed by plaintiff and the United States. The parties indicate that they have reached an agreement to settle the case with each party bearing its own costs, attorney fees and expenses. They also indicate that Mass. Hauling wished to have a status conference prior to the court's acting on the motion. Intervenor Mass. Hauling opposes the dismissal as indicated in a telephonic status conference held October 26, 2004. Intervenor asks the court to retain the case on the docket and address the merits of the procurement and award to Mass. Hauling.

The court declines to grant Intervenor's request. The dispute is currently framed as a challenge by plaintiff to the award to Mass. Hauling. As the facts currently stand, the award to Mass. Hauling is still in place. Plaintiff's agreement to settle with the government moots the entire current dispute. Whatever rights Mass. Hauling has in the future, we hold that it may not force plaintiff and defendant to litigate the complaint currently pending.

Accordingly, the joint motion for voluntary dismissal is granted. The clerk is directed to dismiss the complaint. Each party will bear its own costs, attorney fees and expenses.

ERIC G. BRUGGINK
Judge

**EXHIBIT 5**

**DEPARTMENT OF VETERANS AFFAIRS**
**Medical Center**
**150 South Huntington Avenue**
**Boston MA 02130**

August 20, 2007

In Reply Refer To:

Mass Hauling Corporation
200 Libbey Industrial Parkway
East Weymouth, MA 02189

Re: Notice of Termination for Solicitation No. IFB 523-120-03

To Whom It May Concern:

This is to memorialize for your records the fact that, with regard to Solicitation No. IFB 523-120-03, Mass Hauling Corporation ("MHC") has been terminated for convenience by the Department of Veterans Affairs ("VA") effective September 27, 2004. The VA takes this action pursuant to § 52.212-4 of the Federal Acquisition Regulations.

As you know, MHC was awarded a contract to pick up and remove solid waste from the Jamaica Plains Facility of the Boston Healthcare System on November 25, 2003, but MHC never performed under the contract. Subsequent to the awarding of this contract, the incumbent contractor filed a bid protest against the VA in the United States Court of Federal Claims. As you know, the VA suspended MHC's performance of the contract. Also, as you know, the VA settled this dispute and awarded the contract to the incumbent. MHC never challenged this result.

Accordingly, this letter formalizes what has been evident to all parties since September 27, 2004: that MHC practically and constructively was terminated for convenience by the VA on or about September 27, 2004 and that prior to that date it never performed any work under that contract.

Sincerely,

Felicia Morales
Contracting Officer