IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MASS HAULING CORP. | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-76C |
| | ) | (Judge Baskir) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant | ) | |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to the Court's March 24, 2008 order, paragraph 4 of the Court's August 17, 2006 Special Procedures Order, and Rule 16 and Appendix A of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff and defendant respectfully submit the following joint preliminary status report:

(a) Jurisdiction

The Defendant is currently unaware of any basis upon which to challenge the Court's jurisdiction.

(b) Consolidation

The parties agree that this case should not be consolidated with any other case.

(c) Bifurcation

The parties agree that bifurcation is not appropriate in this case.

(d) Deferral

The parties agree that further proceedings in this case should not be deferred pending consideration of another case before this Court or any other tribunal.

(e) Remand/Suspension

The parties do not at this time intend to seek remand or suspension.

(f) Joinder

The parties agree that no additional parties will be joined.

(g) Dispositive Motions

Defendant intends to file a motion to dismiss, 30 days after the parties' Preliminary Status Conference with the Court. Defendant intends to rely upon the factual and legal bases outlined in defendant's section contained in paragraph (h) below.

(h) Relevant Factual and Legal Issues

Pursuant to the Court's March 24, 2008 order, the parties are directed "to discuss the effect, if any, of the August 20, 2007 termination for convenience on this case." See Document 32, March 24, 2008 order of the Court at 1. See also, Termination Letter dated August 20, 2007, at Exhibit D hereto.

Defendant believes that the termination for convenience letter memorializes the status of the Contract as of the date that D.B.I. Waste Systems, Inc. ("DBI") and the Government settled DBI's bid protest: (1) plaintiff Mass Hauling Corporation ("Mass Hauling") was awarded the contract; (2) Mass Hauling never performed any work pursuant to the Contract; (3) Mass Hauling was never asked to begin working pursuant to the Contract; and accordingly, (4) Mass Hauling was constructively terminated for convenience. The Government believes that the termination letter and the parties' conduct vitiates counts I through IV of Mass Hauling's amended complaint.

Plaintiff believes that the termination for convenience letter is fatally late, precluded and ineffective, and provides confirmation of the Government's bad faith breach of contract and violation of legal requirements, as it was issued almost three years after the Contract was allegedly (and unbeknownst to Plaintiff) terminated, during which time the Government failed to respond to Mass Hauling's inquiries as to the status of the Contract, the Government allegedly (and unbeknownst to Plaintiff) granted the Contract to another waste hauler, DBI, without public bidding, without informing Mass Hauling, and while the Contract award to Mass Hauling remained in full force

and effect under this Court's order dated October 28, 2004 (see Order at Appendix, Exhibit C), and the Contract award to Mass Hauling was never terminated by the government prior to the commencement of the instant lawsuit. The termination for convenience letter of August 20, 2007, alleges incorrectly, improperly and in contravention of this Court's October 28, 2004 Order, which stated that the Contract award to Mass Hauling was "still in place" as of that date, that the contract to Mass Hauling was terminated on September 27, 2004.

The parties have also identified the following legal and factual issues:

(1) Whether Mass Hauling is entitled to damages for its lost profits for the entire length of the contract, for its bid preparation costs, for its start-up and initial preparatory costs, for its standby-readiness costs, and for its settlement costs;

(2) Whether Mass Hauling is permitted to state a claim for declaratory relief stating that the "contract has been awarded to Mass Hauling."

(h)(1) Plaintiff's Additional Statement of Facts and Legal Issues

(1) The Department of Veterans Affairs (hereinafter "the VA") invited bid for a Firm Fixed Price Requirements contract under Solicitation No. IFB523-120-03 for the provision of all labor, materials, tools, transport, travel, equipment and supervision to conduct waste disposal and removal from the VA facilities located in Jamaica Plain, West Roxbury and Brockton, Massachusetts. The terms of the solicitation were for an initial period of October 1, 2003 through September 30, 2004 with the four years immediately following the base period as option years. Mass Hauling submitted offers on the West Roxbury and Jamaica Plain sites and was awarded the contract for the Jamaica Plain site. Mass Hauling offered a price of $146,994.00 for each of the five years of the contract for the Jamaica Plain site. The total amount of the Mass Hauling's bid for the five year period amounted to $734,970.00. On November 23, 2003, the VA, through Memorandum awarded Mass Hauling the Contract. (Please see VA's Memorandum located in the Appendix as Exhibit A; and Plaintiff's memorandum in opposition to the Government's motion to dismiss dated January 25, 2008).

(2) Shortly after the VA awarded the contract to Mass Hauling, DBI filed a bid protest with the General Accounting Office

(GAO) pursuant to 4 C.F.R. §21.0, et seq. The GAO reviewed the protest and issued its decision on December 10, 2003. DBI then filed a Reconsideration of Dismissal of Bid Protest of that decision on or about December 20, 2003, which was also denied by the General Accounting Office. DBI then filed its claim in the United States Court of Federal Claims on or about April 22, 2004. The action was settled between the VA and DBI on or about October 28, 2004, with the Court stating in its Order for dismissal, “As the facts currently stand, the award to Mass Hauling is still in place.”

(3) Mass Hauling was not allowed to provide waste disposal and removal services pursuant to the Contract despite the fact that the decision by the GAO) dismissed the protest by DBI in December of 2003. Further, the VA failed at anytime to provide an explanation to Mass Hauling as to why they were not able to perform under the awarded contract, despite Mass Hauling’s repeated inquiries with the Government as to the status of the Contract.

(4) The VA never issued a proper termination of its Contract with MHC, and the award to Mass. Hauling should be still in place. MHC made countless inquiries to the VA’s Contract Administrator, Norbert Cebula, and others representing the VA, as to the status of

MHC's contract during the years after the Contract was awarded to MHC and after DBI's bid protests.

(5) Subsequent to the Court order of October 28, 2004, MHC's Vice President, Dan Murphy, was referred to a woman in the Federal government in Washington D.C., who led MHC to believe that the result would be positive for MHC on the Contract at issue herein. Throughout 2004 and 2005 MHC's lawyer, Russell Homsy, repeatedly called the VA's lawyers demanding a termination or the status of MHC's Contract. He was repeatedly told that people would look into the matter, but never received a proper termination or explanation of the status of MHC's contract. On October 4, 2006 MHC filed written a claim with the Contracting officer for the VA, alleging that the VA was liable for damages in the amount of $244, 990 (calculated as its lost profit of $48,998 for each year of the contract). The VA has, to date, not properly responded to that Claim.

(6) On or about November 30, 2006, the VA responded that it would require until January 4, 2007 to evaluate MHC's written claim filed on October 4, 2006 with the Contracting Officer for the VA. As of the date of filing this suit, no response was received. Plaintiff's counsel received a copy of a purported letter from Felicia Morales, a

Contracting Officer of the VA, dated August 20, 2007, addressed to MHC and "memorialize[ing]" that the Contract was terminated for convenience "effective September 27, 2004" and that "the VA settled this dispute and awarded the contract to the incumbent." MHC denies ever having received the letter. This letter was given over to Plaintiff's counsel after this lawsuit began.

(7) On or about January 30, 2007, the Plaintiff initiated this litigation in the United States Court of Federal Claims asserting claims against the VA for Breach of Contract, Wrongful Suspension of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Arbitrary and Capricious Suspension of Contract, misrepresentation and deceit, and Declaratory Relief. Plaintiff's First Amended Complaint was filed on or about April 18, 2008.

(8) Mass Hauling sustained five categories of damages, as follows: bid preparation costs; start-up and initial preparatory costs; standby-readiness costs; settlement costs (including legal fees); and expectancy damages.

(9) Plaintiff Mass Hauling Corporation ("Mass Hauling") sustained costs in preparing a bid for the Contract, (b) Mass Hauling was awarded the Contract, (c) Mass Hauling sustained costs in

preparing to perform the contract, (d) Mass Hauling sustained costs in standing by ready to perform the Contract, (e) Mass Hauling sustained costs in attempting to resolve the instant claim, (f) the government refused to permit Mass Hauling to remove and dispose of waste under the contract, and did not respond to Mass Hauling's inquiries as to the status of the Contract, for approximately three years, (g) the Contract award to Mass Hauling was secretly breached by the government by granting the contract to another waste hauler, DBI, without public bidding, without informing Mass Hauling, and while the Contract award to Mass Hauling remained in full force and effect under this Court's Order dated October 28, 2004, and (h) the Contract award to Mass Hauling was never terminated by the government prior to the initiation of the instant lawsuit.

(10) Mass Hauling is entitled to damages for its lost profits for the entire length of the contract, in the amount of $244,990.00, see Kalvar Corp. v. United States, 211 Cl. Ct. 192 (1976), cert. denied, 434 U.S. 830 (1977), appl. after remand, 218 Cl. Ct. 29 (1989) (abuse of discretion or bad faith on termination warrants imposition against government of breach of contract damages including lost profits); Maxima Corp. v. United States, 847 F.2d 1549, 1553 (Fed. Cir.

1988); Torncello v. United States, 681 F.2d 756, 770 (Ct. Cl. 1982) (government may be liable for breach of contract damages where it "dishonor[s], with impunity, its contractual obligations"); for its bid preparation costs, in the amount of $3,000.00, see 48 C.F.R. §52.249-2(g)(2)(i) (on government's premature termination of contract, contractor is entitled to final settlement costs including its initial costs and preparatory expenses); Rockwell Int'l. Corp. v. United States, 8 Cl. Ct. 662 (1985) (bid preparation costs recoverable); for its start-up and initial preparatory costs, in the amount of $25,200.00, see 48 C.F.R. §52.249-2(g)(2)(i); see OAO Corp. v. Unites States, 17 Cl. Ct. 91 (1989) (pre-award start-up costs granted, where necessary to meet a strict performance schedule as set out in the contract); Radant Techs., Inc. v. ASBCA, 91-3 BCA Par. 24,106 (1991) (pre-award costs were found reasonably necessary to meet contract performance schedule); for its standby-readiness costs, in the amount of $12,600.00, see OAO, supra; Radant Techs., supra; Maxima, 847 F.2d at 1553 (where plaintiff maintained capacity to provide minimum services under contract, even though they were not provided, government prohibited from retroactively terminating for convenience); and for its settlement costs, in the amount of

$312,425.00 (including the above damages and legal fees, accruing), see 48 C.F.R. §52.249-2(g)(2)(i); Kalvar Corp., supra (on lawsuit following constructive termination, contractor is entitled to legal fees equal to those necessary to prepare a termination settlement where the government failed to follow proper procedures).

(11) Mass Hauling states that Under the Competition in Contracting Act, 31 U.S.C. §3551, et seq., the contracting officer is required to withhold an award of a contract while there is a protest pending before the General Accounting Office. Any such stay only remains in effect while the protest is pending. 31 U.S.C. §3553(c)(1). Mass Hauling states that the stay should have only remained while the protest was pending, and once the protest was dismissed and DBI filed suit, Mass Hauling should have been allowed to perform under the contract.

(12) The VA never terminated the contract until, at the earliest, after the instant lawsuit was pending, despite Mass Hauling's repeated demands for statement of the status of Mass Hauling's contract or for a termination.

(h)(2) Defendant's Additional Statement of Facts and Legal Issues

(1) On November 24, 2003, Mass Hauling was awarded a contract to provide waste disposal and removal services for VA facilities located in Boston, Massachusetts. The incumbent contractor, DBI, filed a bid protest with the GAO on or about December 10, 2003. The GAO dismissed the protest. DBI then filed a bid protest in this Court (Case No. 04-00713) on or about April 22, 2004. See Verified Complaint of D.B.I. Waste Systems, Inc. (No. 04-713C) attached hereto as Ex. B to the Appendix. Mass Hauling intervened. The bid award was stayed pending DBI's protest. DBI principally alleged that Mass Hauling failed to provide the Government with required certifications and representations in its response to the invitation for bids.

(2) DBI and the agency settled the action resulting in DBI being awarded the contested contract, and on or about October 28, 2004, this Court issued an order for dismissal. The Court's order noted that Mass Hauling's "award was still in place," but the Court declined to retain the case on the docket. See October 28, 2004 Order For Dismissal of DBI's Bid Protest Claim at 1 attached hereto as Ex. C to the Appendix, October 28, 2004 Order at 1. ("Whatever

rights Mass Hauling has in the future, we hold that it may not force plaintiff and defendant to litigate the complaint currently pending.")

(3) Although the agency did not formally issue a notice of termination for convenience to Mass Hauling until August 20, 2007, DBI has performed pursuant to the contract since October 28, 2004. Mass Hauling never filed a bid protest in response to the contract being awarded to D.B.I. Moreover, Mass Hauling has never performed any work pursuant to the contract it was awarded on November 24, 2003.

(4) Instead, Mass Hauling filed a complaint in the above-captioned matter on or about January 30, 2007, and then filed an amended complaint on April 18, 2008. As discussed infra, the Government believes that the termination for convenience notice vitiates Counts I through IV of Mass Hauling's complaint.

(5) Mass Hauling also alleges two other counts in its amended complaint. Count V, "Misrepresentation and Deceit," alleges, in part, that the "VA's misleading or false representations to MHC at the time of and after the award of the Contract to MHC, and after the wrongful suspension of the Contract, as well as its actions and omissions in failing to properly issue a termination constitutes

misrepresentation and deceit." Amended Complaint at ¶ 173. Failure to issue a termination notice does not create a claim of misrepresentation or deceit. Nor does Mass Hauling allege any facts that could support a finding that the VA knowingly and intentionally misled Mass Hauling. In fact, Mass Hauling contradicts its own contention when it alleges: "In its reliance in the VA's grant of the Contract to MHC, and on the VA's statements and actions indicating that the VA might not still seek MHC's performance of the Contract, MHC has been harmed and has suffered damages." Amended Complaint at ¶ 172. Mass Hauling cannot allege that the VA committed a misrepresentation if Mass Hauling alleges that the VA indicated that the "VA might not still seek MHC's performance of the contract."

(6) Count VI of the Amended Complaint seeks declaratory relief. The Court lacks jurisdiction to grant the equitable relief Mass Hauling seeks in the form of declaratory judgment. Mass Hauling offers no jurisdictional support for the declaratory relief it seeks, and there is no valid request for monetary relief to which Mass Hauling's request for declaratory relief could append. Absent the jurisdictional prerequisite of a claim that is "an incident of or collateral to" a valid

claim for monetary relief, Mass Hauling's request for declaratory judgment must fail. See 28 U.S.C. § 1491(a)(2).

(7) Mass Hauling's prayer for declaratory relief is also moot. Mass Hauling was awarded the contract. Mass Hauling, however, never performed pursuant to the contract, and the agency terminated Mass Hauling's contract for convenience. Even if the Court issued a declaratory judgment that Mass Hauling "has been lawfully awarded the contract," that judgment would not change the fact that Mass Hauling has never performed the contract. Mass Hauling's failure to perform pursuant to the contract, as well as the agency decision to issue a termination for convenience, renders the previous contract award moot.

Mass Hauling also seeks "lost profits over the entire length of the contract. Compl. at 25. Mass Hauling is not entitled to this prayer for relief. The contract contains a termination for convenience clause which does not permit the recovery of lost profits in this case. That clause states in pertinent part that "the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the contractor can demonstrate to the satisfaction of the Government

using its standard record keeping, have resulted from the termination." See Invitation for Bid 523-120-03 at 72 attached hereto as Ex. D to the Appendix. Moreover, it is well settled that a plaintiff that never starts performance and incurs no costs of performance is not entitled to damages such as anticipated profits. See e.g. G.C. Casebolt Co. v. United States, 421 F.2d 710, 713 (1970). Here, Mass Hauling neither alleges nor can allege that it performed any work prior to the notice of termination for convenience. Accordingly, Mass Hauling cannot claim lost profits or any other damages.

(i) Settlement

Prior to the filing of Plaintiff's First Amended Complaint, the parties discussed settlement and participated in an alternative dispute resolution ("ADR") conference with the Honorable Eric Bruggink, on August 6 and 20, 2007. These discussions were fruitless. Plaintiff has since presented additional facts in opposition to the motion to dismiss and in its amended complaint. In light of these developments, plaintiff believes that it is possible that a further ADR conference could be productive. The Government believes that a narrow issue exists upon which settlement might be justified, but otherwise believes that this matter is ripe to be dismissed.

(j) Trial

If the matter is not resolved prior to trial, the parties propose that the trial be held two to three months after the close of discovery, and the court's ruling upon any dispositive motions. At this time, the parties anticipate that a trial would last approximately three days. The parties request that the trial be conducted in Boston, MA.

(k) Electronic Case Management

The parties are unaware of any special issues regarding electronic case management at this time.

(l) Additional Information

The parties are available for a preliminary status hearing on the following dates: August 20, 2008, or August 21, 2008.

(m) Discovery Plan

| | |
|---|---|
| Exchange of Initial Disclosures | October 15, 2008 |
| Close of Fact Discovery | March 30, 2009 |

Appendix

(A) November 24, 2003 Memorandum from the VA awarding the contract to Mass Hauling.

(B) First Amended Complaint of D.B.I. Waste Systems, Inc. (No. 04-713C);

(C) October 28, 2004, Order For Dismissal of D.B.I.'s Bid Protest Claim;

(D) Notice of Termination letter dated August 20, 2007, signed by Felicia Morales as Contracting Officer.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s Donald E. Kinner
DONALD E. KINNER
Assistant Director

/s Carlo Cellai
Carlo Cellai, Esq.
CELLAI LAW OFFICES, P.C.
355 Congress Street
Suite 2B
Boston, MA 02110
Tel: (617) 367-2199
Fax: (617)367-2075
Attorneys for the Plaintiff

s/ David M. Hibey
DAVID M. HIBEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 307-0163
Fax: (202) 514-8624

Attorneys for Defendant

July 2, 2008

## CERTIFICATE OF FILING

I hereby certify that on this 2nd day of July 2008, a copy of the foregoing "Joint Preliminary Status Report" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/David M. Hibey