# In the United States Court of Federal Claims

Case No. 07-76C
(FILED: June 30, 2009)
*Not for Publication*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| MASS HAULING CORPORATION, | * |
| *Plaintiff,* | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES OF AMERICA, | * |
| *Defendant.* | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Carlo Cellai**, Cellai Law Offices, P.C., Boston, Massachusetts, attorney of record for Plaintiff. With him was **Tracy Kish**, arguing for Plaintiff.

**David M. Hibey,** Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., attorney of record for Defendant. With him on the briefs were **Jeffrey S. Buckholtz**, Acting Assistant Attorney General, **Jeanne E. Davidson**, Director, and **Donald E. Kinner,** Assistant Director.

**Sharon J. Kim**, Law Clerk.

## OPINION AND ORDER

**BASKIR, Judge**

This matter is styled a breach of contract. Plaintiff, Mass Hauling Inc., filed suit against the Department of Veterans Affairs (Defendant) seeking lost profits and other damages for Defendant's failure to implement an award of contract to provide waste disposal and removal. **Pursuant to the Rules of the United States Court of Federal Claims (RCFC) 12(b), we convert Defendant's Motion to Dismiss under RCFC 12(b)(6) to one under RCFC 56 and grant summary judgment to Defendant, finding that Plaintiff is denied all recovery pursuant to the contract's termination for convenience clause.**

## I.    BACKGROUND

The relevant facts of this case, taken from Plaintiff's filings, are undisputed. However, a number of anomalies exist in Mass Hauling's recitation of the facts. While this is purported to be a breach of contract claim under the Contract Disputes Act

(CDA), 28 U.S.C. § 1491, it appears that Plaintiff also seeks bid protest recovery more than two years after a protest was ripe.

A.    *Prior Bid Protest*

This matter arises from a Government solicitation to provide waste disposal and removal services from Defendant's facility in Jamaica Plains, Massachusetts. Solicitation No. IFB523-120-03.  The contract provided for a one-year base period beginning on October 1, 2003, through September 30, 2004, with four option years.  *Id.* The solicitation included a standard termination for convenience clause waiving breach of contract liability in the event of unilateral termination by the Government.  Mass Hauling was the low bidder with a total proposed cost of $734,970 and was awarded the contract on November 24, 2003.  Plaintiff's Amended Complaint (Am. Compl.), ¶ 8, 11.

DBI Waste Systems (DBI) was the next lowest bidder by $30.  Am. Compl., ¶ 11. Immediately after the contract award to Mass Hauling was announced, DBI filed a protest with the General Accounting Office (GAO) on December 4, 2003, and the award was stayed pursuant to 31 U.S.C. § 3553(c)(1).  *Id.*  In addition to the price differential being *de minimus*, DBI alleged that Mass Hauling's bid was "inconsistent, indeterminate and ultimately nonresponsive."  *See DBI v. United States*, No. 04-713C, Verified Compl., ¶ 25.  Specifically, DBI claimed that Mass Hauling failed to provide pricing for various items required by the invitation to bid, instead inserting "blanks, dashes and zeroes."  *Id.* at ¶ 26-27.

During the course of litigation before the GAO, the contracting officer admitted to having altered Mass Hauling's bid before awarding it the contract by adding Plaintiff's name and address to the original proposal.  *Id.* at ¶ 31-33, 35.  Despite these alleged deficiencies, the GAO dismissed the protest on March 25, 2004, finding no basis for challenging the agency's action and upholding Mass Hauling's award as the low bidder. *Id.* at ¶ 37-38; Am. Compl., ¶ 12-15.

A month after the GAO's dismissal, DBI filed a separate bid protest with this Court on April 22, 2004.  Am. Compl., ¶ 10.  Mass Hauling intervened, and by agreement of Defendant and DBI on April 27, 2004, action on the contract was voluntarily stayed.  *DBI v. United States*, No. 04-713C, Order dated April 28, 2004. Prior to the Court's resolution on the merits, DBI and Defendant entered into a settlement agreement on September 27, 2004, and jointly moved that the case be dismissed.  *See* Defendant's Motion to Dismiss (Def. Motion), 3.

Mass Hauling had not been part of the settlement negotiations.  However, Defendant's counsel informed Mass Hauling's attorney, Russell Homsy, that DBI would be awarded the contract as a result of the settlement and that Mass Hauling's contract would be terminated for convenience pursuant to the termination clause in the original solicitation.  Pl. Opposition, Ex. 4, "Affidavit of Plaintiff's Former Attorney, Russell T.

Homsy, Esquire" (Homsy Aff.), ¶ 6.  Defendant's counsel advised Mr. Homsy at the dismissal hearing on October 26, 2004, to expect to receive a written termination for convenience.  *Id.* at ¶ 6.

The Court, Judge Bruggink presiding, dismissed the matter by Order dated October 28, 2004.  The Court was apparently not privy to the specific terms of the settlement.  The Court's dismissal order stated, "[t]his dispute is framed as a challenge by [DBI] to the award to Mass Hauling.  As the facts currently stand, the award to Mass Hauling is still in place."  Am. Compl., ¶ 35 (citing Order, October 28, 2004).  Mass Hauling relies on this statement in asserting its award is intact, despite Defendant's oral representations and Plaintiff's own admissions to the contrary.  Oral Argument, June 9, 2009 (Hr'g) at 10:34AM, 11:05AM.

Thereafter Plaintiff made close to a dozen phone calls to Defendant over the course of two years, seeking to obtain a written statement of its contractual responsibilities.  Am. Compl., ¶ 37-41.  On at least one occasion, Plaintiff warned Defendant that it would be filing suit after receiving a written termination.  Homsy Aff., ¶ 14.  Defendant failed to respond or comply with Plaintiff's requests for a written termination.  Homsy Aff., ¶ 12- 17.  During this time, Mass Hauling performed no work under the contract and apparently watched from its offices as DBI's trucks hauled waste from the facility.  *Id.*; Pl.'s Opp., Ex. 2, "Affidavit of Plaintiff's employee Daniel J. Murphy" (Murphy Aff.), dated January 24, 2008 ("My office has seen DBI waste disposal equipment located at the subject facility, and on information and belief, DBI's trucks are hauling the waste from the Facility.").  We note that Plaintiff did not at this or any other time file a bid protest challenging the apparent award of the contract to DBI.

It was not until October 4, 2006, that Mass Hauling sent to Defendant its first written communication since the DBI settlement, demanding a statement of its contractual obligations and seeking permission to begin performance.  Am. Compl., ¶ 42.  Additionally, Mass Hauling alleged in this letter that Defendant was liable for Mass Hauling's lost profits of $244,990 on the five-year contract.  *Id.*  The parties are agreed that this letter satisfies the CDA jurisdictional prerequisite of a demand to the contracting officer.  *See* Defendant's Notice, dated November 3, 2008.  Defendant responded that it would need until January 4, 2006, to answer.  *Id.*  That date passed with no response, and Mass Hauling commenced suit in this Court on January 30, 2007.  *Id.*

B.    *Current Proceedings*

Sometime after the commencement of the present litigation, Defendant provided to counsel for Mass Hauling a letter dated August 20, 2007, purporting to confirm Defendant's award of contract to DBI in 2004 as a result of the settlement.  Am. Compl., ¶ 44.  The letter further "formalized what has been evident to all parties since September 2004: that [Plaintiff] practically and constructively [had been] terminated for convenience by [Defendant] on or about September 27, 2004, and that prior to that date

3

it never performed any work under that contract." Pl.'s Opp., Ex. 5.

Mass Hauling amended its Complaint on April 18, 2008, acknowledging the receipt of the August 20, 2007, letter, but in the same paragraph denying having received it at the time it was dated. Am. Compl., ¶ 44. When asked to clarify at oral argument on June 9, 2009, Mass Hauling claimed that it had not received the letter until months after it was dated and even as late as January 2008. Hr'g at 10:03AM. The Court is unable to reconcile these assertions.

Mass Hauling claims the letter, which post-dates the start of this litigation, is untimely and of no consequence. Plaintiff characterizes the cancellation of the contract as a clear breach, entitling it to the full common law measure of recovery. In addition to breach of contract, Mass Hauling contends that Defendant's continued refusal to allow Mass Hauling's performance constitutes wrongful suspension, breach of implied covenant of good faith and fair dealing, arbitrary and capricious suspension of contract, and misrepresentation and deceit. Am. Compl., ¶ 45-174.

Furthermore, Mass Hauling claims to have reasonably relied upon Defendant's obligations under the contract, thereby passing up other potentially lucrative business opportunities. Id. at ¶ 30. It asks this Court for lost profits in the amount of $244,990. Id. at ¶ 42. Plaintiff additionally seeks bid preparation costs of $3,000, start-up and initial preparatory costs of $25,200, standby-readiness costs of $12,600, settlement costs of $312,425, and declaratory judgment of its "exclusive rights" under the contract. Id. at ¶ 45-174.

This matter is now before the Court on Defendant's Motion to Dismiss. Defendant urges this Court to consider the preemptive force of the termination for convenience clause contained in the contract, quoted in pertinent part:

> The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. . . . Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, having resulted from the termination . . . . The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

Def. Motion, 7; Pl. Initial Disclosures (Contract, 72). Defendant believes this clause completely protects the Government from breach of contract liability; Plaintiff, having performed no work under the contract, is entitled to no compensation. Defendant seeks dismissal of Plaintiff's damages claim pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. It asks the Court to dismiss Plaintiff's remaining claim for declaratory relief pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction.

4

## II.    DISCUSSION

A.    *Standard of Review*

RCFC 12(b)(6) governs dismissal of claims for failure to state a claim upon which relief can be granted.  When evaluating a motion to dismiss, the "unchallenged allegations of the complaint should be construed favorably to the pleader."  *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The Court must not dismiss a complaint if the plaintiff can show plausible grounds upon which relief can be granted.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559-60 (2007).

Under RCFC 12, the court "may convert a motion to dismiss into a motion for summary judgment under RCFC 56 if it relies on evidence outside the pleadings." *Brubaker Amusement Co. v. United States*, 304 F.3d 1349, 1355 (Fed. Cir. 2002). Conversion of a motion for judgment on the pleadings into one for summary judgment should only occur after the parties have been afforded ". . . a reasonable opportunity to present all the material that is pertinent to the motion."  RCFC 12(d).

At oral argument, the parties were asked whether discovery had been sufficiently exhausted to permit the Court to convert Defendant's motion to dismiss into one for summary judgment.  Plaintiff suggested it needed more discovery to determine whether Defendant had valid grounds to terminate the contract for convenience.  Hr'g at 10:35AM.  Plaintiff misreads existing authority; neither changed circumstances nor any other justifying grounds are required for a termination for convenience.  We discuss the merits of Plaintiff's claim below.

Accordingly, because the Court relies on evidence outside the pleadings and the parties have had ample opportunity to present all pertinent material, we treat Defendant's motion to dismiss as a motion for summary judgment under RCFC 56(c). Summary judgment is proper when the evidence demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  RCFC 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the burden of establishing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In considering the existence of a genuine issue of material fact, the Court must draw all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).  Mere denials, conclusory statements, or evidence that is not significantly probative will not suffice to preclude summary judgment.  *See Anderson*, 477 U.S. at 249-52.

B.    *Termination for Convenience*

The central questions before the Court are whether Defendant's conduct can be construed as a convenience termination and the extent to which the clause limits Defendant's liability for breach.  In addition, there are the further questions of whether Defendant's failure for over two years to advise Plaintiff of the termination in writing constitutes bad faith, whether Plaintiff was diligent in seeking to clarify its contract status, and whether it properly mitigated any claimed damages from Defendant's alleged breach.  During oral argument, counsel for Plaintiff made a number of concessions that all but completely vitiate its case.  We note them in the following sections.

The Government can terminate contracts for convenience when its interests would be served.  48 C.F.R. § 49.101.  "'The termination for convenience' concept, which serves only the government, arose from the unpredictable nature of Governmental wartime procurement."  *Maxima Corp. v. United States*, 847 F.2d 1549, 1552 (Fed. Cir. 1988).  As its use extended into peacetime, non-military procurement, the doctrine has retained its fundamental purpose: "to reduce governmental liability for breach of contract, by allocating to the contractor a share of the risk of unexpected change in circumstances."  *Id.* (citations omitted); *see also Krygoski Constr. Co. v. United States*, 94 F.3d 1537, 1541 (Fed. Cir. 1996) (recounting history of doctrine).

Under the termination clause, the Government has the right to terminate "at will."  *John Reiner & Co. v. United States*, 325 F.2d 438, 442 (Ct. Cl. 1963) (citations omitted). In light of this discretion, "it is not the province of the courts to decide *de novo* whether termination was the best course.  In the absence of bad faith or clear abuse of discretion the contracting officer's election to terminate is conclusive."  *Krygoski Constr. Co.,* 94 F.3d at 1543 (citations omitted).  The practical effect of this Government right is to preclude terminated contractors from recovering traditional breach of contract damages.  *See United States v. Amdahl Corp.*, 786 F.2d 387, 394 (Fed. Cir. 1986) (citations and internal quotations omitted).  When a contract is terminated for convenience, the contractor's recovery is limited to "costs incurred, profit on work done and the costs of preparing the termination settlement proposal," and contractors are barred from recovering lost profits.  *Maxima Corp.*, 847 at 1552 (Fed. Cir. 1988) (citations omitted).

However, a termination clause is not an open license for agencies to dishonor contractual obligations.  *See Torncello v. United States*, 681 F.2d 756, 770 (Ct. Cl. 1982) (refusing to authorize a termination for convenience that would "vitiate the consideration normally furnished").  When tainted by bad faith or an abuse of discretion, a termination for convenience causes a contract breach, allowing the contractor to recover traditional breach of contract damages, including reasonable profits that would have been earned had it performed under the contract.  *See Id.*

The contractor's burden to prove the Government acted in bad faith, however, is

very weighty.  *Krygoski Constr. Co.*, 94 F.3d at 1541 ("Any analysis of a question of Governmental bad faith must begin with the presumption that public officials act conscientiously in the discharge of their duties.") (citations omitted).  To succeed, a contractor must show, in that time-honored phrase, "well-nigh irrefragable proof" of bad faith on the part of Government officials.  *Torncello*, 681 F.2d at 770.  This requires clear and convincing evidence of a specific intent to injure plaintiff, making it "very difficult" for terminated contractors to recover traditional breach of contract damages and lost profits.  *See Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002).

    1. <u>Validity of Termination</u>

   We first dispense with Mass Hauling's argument that Defendant never terminated the contract and Plaintiff remains the awardee.  Plaintiff admitted there were two separate incidents that demonstrate its awareness of the termination as early as October 2004.  Hr'g at 10:36AM.  First, Plaintiff's former counsel, Mr. Homsy, admitted that in October 2004, Defendant's counsel verbally communicated to him the Government's decision to terminate Plaintiff's contract for convenience.  Homsy Aff., ¶ 7.  Second, by Mr. Murphy's affidavit, Mass Hauling observed first-hand as DBI hauled waste from the Jamaica Plain facility.  Murphy Aff., ¶ 13.  Mass Hauling's insistence that it was never made aware of the termination until after receipt of the August 27, 2007, letter contradicts the documents Plaintiff itself produced.  These two occurrences together, if not independently, serve as sufficient notice of Plaintiff's termination.

    (a) *Constructive Termination for Convenience*

   With the understanding that Plaintiff was aware its contract was terminated as early as October 2004, we next address Plaintiff's objections to the validity of the termination.  According to Plaintiff, the termination was improper for two reasons: first, because written notification was required by the Federal Acquisition Regulation (FAR); and second, because Defendant failed to show a "valid ground" for the cancellation prior to invoking the termination clause.  Pl. Opp., 14, 18 (citing 48 C.F.R. §§ 49.101(b), 49.102); Hr'g at 10:36AM.  Both arguments are without merit.

   Plaintiff's first allegation that formal notification was required prior to termination is not supported by precedent.  Aside from our finding that Plaintiff was sufficiently notified of the termination on at least two separate occasions, discussed above, the Government's right to terminate is conclusive under the doctrine of constructive termination for convenience.

   The United States Court of Appeals for the Federal Circuit has allowed contracts to be constructively terminated by the Government.  *See, e.g., Maxima Corp.*, 847 F.2d at 1552 (recounting history of doctrine).  That is to say, if the contracting officer could have relied on the termination clause at the time of cancellation but did not,

the courts will allow the Government to retroactively justify its cancellation under the doctrine of constructive termination. *Id.* at 1552-53 (citations omitted). Thus, the Government avoids breach of contract liability even if it failed to expressly invoke the termination clause. *Id.*; *see also John Reiner & Co. v. United States*, 325 F.2d 438 (Ct. Cl. 1963).

The Supreme Court case of *College Point Boat Corporation v. United States* is particularly instructive. 267 U.S. 12 (1925). There, the defendant purported to cancel a Navy contract midstream without expressly invoking its termination right and without knowledge that it even had such authority under a World War I statute. *See John Reiner*, 325 F.2d at 443 (discussing *College Point Boat Corp.*, 267 U.S. at 16). The Navy failed to give notice to terminate the contract, and it appeared that the defendant was anticipatorily breaching the contract. *Id.* The Court held, nevertheless, that the contractor could only recover the measure of relief allowed by the termination statute. *Id.* "A party to a contract who is sued for its breach may ordinarily defend on the ground that there existed, at the time, a legal excuse for nonperformance by him, although he was then ignorant of the fact. He may, likewise, justify an asserted termination . . . of a contract by proving that there was, at the time, an adequate cause, although it did not become known to him until later." *Id.* (quoting *College Point*, 267 U.S. at 15-16). Hence, the Government's right to terminate was held effective when asserted later in court, thereby barring recovery for prospective profits by the terminated contractor. *See Id.*

In applying *College Point*, the Claims Court in *John Reiner* relied on the parties' broad termination clause as a valid ground for the Government to terminate, even when the Government failed to expressly invoke the right at the time it cancelled the contract. *John Reiner*, 325 F.2d at 443. Allowing the clause to be retroactively applied, the Court held "the [clause] controls the case and [operates] to curtail the damages recoverable." *Id.* (citing *College Point*, 267 U.S. at 16). These two cases all but completely dispose of Plaintiff's claim that Defendant's termination was deficient.

As in *John Reiner*, the termination clause in the instant matter is similarly broad. Under the clause, "[t]he Government reserves the right to terminate this contract, or any part hereof, for its sole convenience . . . ." Pl. Initial Disclosures (Contract, p. 72). Accordingly, the clause provides valid grounds for the Government to terminate the contract, even when first asserting that right later in court. *John Reiner*, 325 F.2d at 443. Defendant's alleged lack of formal termination does not compel us to hold that in cancelling the contract Defendant committed a common-law breach. *Id.* Moreover, the failure to abide by the FAR requirement of a written notice does not, as the Plaintiff contends, impair the application of the termination clause. *See id.* at 443-44. Plaintiff's recovery is limited to the terms of the termination clause, and recovery of lost profits is barred absent a showing of bad faith. The extent to which Plaintiff demonstrates bad faith is discussed below.

(b)     *"Changed Circumstances" or "Valid Grounds"*

Plaintiff's second allegation of an improper termination is equally unavailing. Mass Hauling argued in its papers that the termination clause could only be invoked where there is a "change in circumstances" or an otherwise justified ground to terminate the contract.  *See* Pl. Opp., 18.  At oral argument, Plaintiff conceded that the "changed circumstances" test had been explicitly rejected by the Federal Circuit.  *See T&M Distributors, Inc. v. United States*, 185 F.3d 1279, 1284 (Fed. Cir. 1999) ("a cardinal change is not a prerequisite for a valid termination for convenience").

However, at oral argument, Mass Hauling cited *John Reiner* to support the proposition that Defendant was required to show a "valid ground" prior to terminating for convenience.  Hr'g at 10:36AM.  Mass Hauling requested that the Court not convert Defendant's Motion to Dismiss into one for summary judgment before the Court could determine through discovery whether Defendant in fact had "valid grounds" to terminate the contract.  Hr'g at 10:37AM.  Plaintiff wholly misconstrues the *John Reiner* case.

In *John Reiner*, the Claims Court found the termination clause in the parties' contract sufficient "grounds" for the Government's unilateral cancellation.  325 F.2d at 443 ("Under [the broad termination clause] . . . the defendant had a valid ground to terminate.").  Plaintiff would have the Court require that Defendant independently justify the cancellation prior to invoking the termination clause.  That would effectively nullify the Government's discretion to terminate "at will."

We are reminded that the contracting officer's decision to terminate is conclusive. *Krygoski Constr. Co.*, 94 F.3d at 1543.  If Plaintiff wished to press Defendant for its grounds for cancelling Mass Hauling's contract, it should have done so by filing its own bid protest at the time Plaintiff was aware of the termination.  At oral argument, Plaintiff's counsel could not explain to the Court why Plaintiff did not take protective action of any kind immediately in October 2004, or why Plaintiff took no legal steps until two and a half years later.  Hr'g at 10:41AM.

## 2.   Bad Faith Allegation

Plaintiff's remaining claim is that Defendant acted in bad faith, thereby converting the termination for convenience into a breach of contract and entitling Plaintiff to lost profits.  Pl. Opp., 13-14.  This argument also relies on faulty legal grounds.

Mass Hauling claims bad faith can be demonstrated by an accumulation of events.  Hr'g at 10:44AM.  These events include the contracting officer's failure to formally terminate for convenience and the intentional refusal to respond to Plaintiff's repeated verbal requests for information.  On at least one occasion, Mass Hauling telephoned "a woman in the Federal Government in Washington DC" and was led to believe it remained the contract awardee.  Am. Compl., ¶ 40.  Based on these representations, Plaintiff claims Defendant prevented Mass Hauling from performing without explanation for several years.  Pl. Opp., 16.  During this time, Mass Hauling

speculates without a shred of supporting evidence that the only plausible way DBI could have been awarded the contract is through Defendant's acceptance of an "illegally changed bid, which is an impropriety constituting a clear abuse of discretion and violation of the public bidding laws." Pl. Opp., 18.

None of these assertions rises to the level of clear and convincing evidence of a specific intent to injure Plaintiff. When pressed further, Plaintiff claimed the contracting officer demonstrated animus toward Mass Hauling by terminating its contract in order to get a "better deal." Hr'g at 10:48AM. Aside from the speculative nature of this allegation, Plaintiff forgets that DBI's bid price was $6 more per year than that of Mass Hauling. Defendant's two-year silence fails to amount to "irrefragable proof" of bad faith required to convert Defendant's termination into a clear breach.

Last, Mass Hauling claims the August 2007 letter was created in bad faith because Defendant's termination of Plaintiff's contract and award to DBI were "in direct contravention" of Judge Bruggink's court order dated October 2004. Hr'g at 10:46AM. Clearly, at that time Judge Bruggink believed Mass Hauling's contract award was still intact because he had not been privy to the terms of Defendant's settlement with DBI. We do not read Judge Bruggink's statement as any kind of permanent guarantee of Plaintiff's contract award.

In sum, the Court construes Defendant's conduct as a constructive convenience termination retroactive to October 2004. Not having shown bad faith, Plaintiff is precluded from recovery of traditional breach of contract damages, including lost profits. *See Amdahl Corp.*, 786 F.2d at 394. The only question that remains is the relief available to Plaintiff under the termination clause in the parties' executed contract.

C.    *Recovery Under the Termination Clause*

The termination clause allows Plaintiff two types of recovery: work performed under the contract before termination; and all other reasonable charges resulting from the termination. Def. Motion, 7. With regard to performance fees, the clause provides that Plaintiff "shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination." *Id.* By its own admission, Mass Hauling has not performed any work under the contract and is not entitled to a percentage of the contract price. Am. Compl., ¶ 19-20. Therefore, Plaintiff's recovery is limited to "all other reasonable charges resulting from the termination." *Id.*

Specifically, the clause allows Plaintiff to be reimbursed for "reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, having resulted from the termination." Def. Motion, 7 (quoting the termination clause). The proviso is that "[t]he Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided." *Id.*

Mass Hauling seeks various costs for bid preparation, start-up, standby-

readiness, and settlement.  However, Plaintiff fails to plead with particularity when or why those costs were incurred.  At oral argument, Mass Hauling could not even give the Court a time frame for these costs.  Hr'g at 10:53AM.  For example, Plaintiff seeks startup and mobilization costs in the amount of $25,200, sustained when "expanding its hauling and manpower capabilities" to prepare for contract performance.  Pl.'s Response, 10-11.  Plaintiff claims these mobilization costs were reasonably necessary to meet the performance schedule of the contract.  *Id.* at 11.  By its own admission, these were not costs flowing from the contract's termination, even as a stand-alone claim.

Plaintiff's arguments again rest on faulty propositions.  The cases on which Plaintiff relies are all distinguishable, in that they involve successful bid protests and recovery for arbitrary and capricious agency action, *see, e.g., Rockwell Int'l Corp v. United States*, 8 Cl. Ct. 662 (1985) (allowing bid preparation costs in a bid protest), or contracts that had been partially or fully performed by the contractor prior to the Government's termination, *see*, *e.g., Maxima Corp.*, 847 F.2d 1549 (refusing to allow the Government to retroactively terminate for convenience after contractor had fully performed under the contract); *OAO Corp. v. United States*, 17 Cl. Ct. 91 (1989) (granting reimbursement for work performed under the contract before termination).  When pressed for cases involving CDA claims allowing recovery for Plaintiff's alleged costs prior to the Government's authorization to begin performance, Plaintiff could provide no response.  Hr'g at 10:54AM.

Moreover, Mass Hauling's award was statutorily stayed during DBI's agency protest before the GAO and by agreement of the parties during DBI's bid protest before this Court.  By Plaintiff's own admission, Mass Hauling was not given any mobilization orders to start performance.  Hr'g at 10:56AM.  Upon the Court's dismissal of DBI's bid protest in October 2004 and for two years thereafter, Plaintiff verbally demanded Defendant's authorization to begin performance.  Plaintiff was repeatedly rebuffed.  The Court is at a loss as to how Mass Hauling incurred $25,200 in mobilization costs "as a result of the termination" while Plaintiff was seeking authority to begin performance.

Deficiencies in pleading aside, the Court finds unreasonable any amount Mass Hauling expended in the absence of Defendant's express permission to begin performance.  Moreover, Plaintiff seeks contract-related costs during the very periods it claims to have been seeking clarification of its rights under the contract.  Plaintiff's anticipatory costs in hopes of receiving the green light for contract performance were avoidable and therefore not recoverable under the termination clause.

III.     **CONCLUSION**

**For the foregoing reasons, we find Defendant constructively terminated Mass Hauling's contract for convenience.  Plaintiff is denied all recovery pursuant to the contract's termination clause.  We accordingly GRANT Defendant summary judgment pursuant to RCFC 56.**

**The Clerk of the Court is directed to DISMISS Plaintiff's Complaint.  The parties shall bear their own costs.**

**IT IS SO ORDERED.**

 s/ Lawrence M. Baskir  
LAWRENCE M. BASKIR  
Judge
